THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| BODIED BY BELLA BOUTIQUE, LLC, a Florida limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>BODYED BY BELLA LLC, a North Carolina limited liability company,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER DENYING [22] SECOND RENEWED MOTION FOR DEFAULT JUDGMENT<br><br><br>Case No. 2:21-cv-00693<br><br>District Judge David Barlow |

Before the court is Plaintiff's Second Renewed Motion for Default Judgment.[1] Plaintiff Bodied by Bella, LLC requests that this court enter default judgment against Defendant Bodyed By Bella, LLC. Having reviewed the briefing, Plaintiff's Complaint, and relevant law, the court DENIES Plaintiff's motion.

## UNCHALLENGED FACTS[2]

Plaintiff Bodied by Bella Boutique, LLC is a Florida limited liability company.[3] Plaintiff is a well-established and recognized manufacturer and seller of beauty creams, waist trainers, contour belts, shapewear, accessories, apparel, and assorted beauty/body products and services.[4]

Plaintiff has used the BODIED BY BELLA Mark in commerce throughout the United States continuously since March 1, 2010, in connection with the manufacture, distribution, offering for sale, sale, marketing, advertising, and promotion of shapewear, beauty creams,

---

[1] ECF No. 17, filed October 17, 2022.
[2] A failure to deny a well-pleaded allegation, other than an allegation of damages, constitutes an admission of the fact. Fed. R. Civ. P. 8(b)(6). Accordingly, considering a motion for default judgment, the court accepts as true the well-pleaded allegations in the complaint. See *United States v. Craighead*, 176 F. App'x 922, 924 (10th Cir. 2006) (unpublished).
[3] Amended Compl. ¶ 3, ECF No. 16.
[4] *Id.* at ¶¶ 3, 9.

1

beauty services, and body care.[5] Plaintiff's BODIED BY BELLA Mark is distinctive to both the consuming public and Plaintiff's trade.[6] Plaintiff has spent considerable time, resources, and expense in building the goodwill in this trademark, as well as on the quality of its products and reputation of its brand.[7] As a result of Plaintiff's longstanding use and advertising, the public has come to associate the Marks exclusively with products emanating from Plaintiff.[8]

Plaintiff is the owner of valid and subsisting United States Registration No. 6182358 on the Principal Register in the United States Patent and Trademark Office for the BODIED BY BELLA Mark for beauty creams. Plaintiff also is the owner of United States Registration No. 6,670,087 on the Principal Register in the United States Patent and Trademark Office for the BODIED BY BELLA Mark for beauty spa services, namely, cosmetic body care.[9] It has applied for the following trademarks: application Serial No. 90096702 for "BODIED BY BELLA" for shapewear including corsets and waist trainers, application Serial No. 90211798 for a sound mark, and application Serial No. 90517408 for "BODIED BY BELLA" for shapewear including waist trainers and corsets.[10]

Defendant Bodyed by Bella LLC is a North Carolina limited liability company.[11] Defendant engages in the same business as Plaintiff.[12] Defendant does business in Utah and throughout the United States.[13] Defendant offers to ship products to Utah through the domain located at https://bodyedbybella.com and has sold and shipped product to individuals in Utah.[14]

---

[5] *Id.* at ¶ 12.
[6] *Id.* at ¶ 14.
[7] *Id.* at ¶ 15.
[8] *Id.* at ¶ 16.
[9] *Id.* at ¶ 10.
[10] *Id.* at ¶ 11.
[11] *Id.* at ¶ 4.
[12] *Id.*
[13] *Id.* at ¶ 6.
[14] *Id.*

Without Plaintiff's authorization, Defendant adopted and began using the Bodyed by Bella mark in United States commerce, and in the same trade channels as Plaintiff and on similar products.[15] Defendant has done this with knowledge of Plaintiff's prior rights in the BODIED BY BELLA Mark and with the intent to cause confusion and to trade on Plaintiff's goodwill.[16]

On May 13, 2021, Plaintiff's counsel sent a cease-and-desist letter to Defendant objecting to Defendant's use of the Bodyed by Bella mark.[17] On November 23, 2021, Plaintiff filed the complaint ("Original Complaint") in this court.[18] On March 28, 2022, Plaintiff moved for Entry of Default against Defendant.[19] After the default certificate was entered on March 30, Plaintiff moved for default judgment on June 28, 2022.[20] Subsequently, the court requested additional briefing on the grounds for its exercise of personal jurisdiction over Defendant.[21] Plaintiff provided briefing[22] and the court denied its motion for default judgment but granted it leave to engage in limited discovery regarding the existence of personal jurisdiction over Defendant.[23] On August 25, 2022, Plaintiff filed a supplemental brief on personal jurisdiction.[24] It also filed an amended complaint.[25] On October 17, 2022, Plaintiff filed a renewed motion for default judgment.[26] The court requested Plaintiff show cause as to why it did not serve the amended complaint on Defendant or why service was not required.[27] On November 8, 2022, Plaintiff filed its brief responding to the court's order to show cause.[28] On November 27, 2022, Plaintiff filed

---

[15] *Id.* at ¶¶ 18, 20.
[16] *Id.* at ¶ 28.
[17] *Id.* at ¶ 22.
[18] ECF No. 2.
[19] ECF No. 7.
[20] ECF No. 11.
[21] ECF No. 12.
[22] ECF No. 13.
[23] ECF No. 14.
[24] ECF No. 15.
[25] ECF No. 16.
[26] ECF No. 17.
[27] ECF No. 18.
[28] ECF No. 19.

proof of service on the docket.[29] The court denied Plaintiff's Amended Motion for Default Judgment for lack of personal jurisdiction due to Plaintiff's improper service on Defendant of the amended complaint.[30] Plaintiff filed this Second Renewed Motion for Default Judgment on May 2, 2023.[31] Plaintiff attached as exhibits proof of attempted service on Defendant of the amended complaint.[32]

## DISCUSSION

A "district court must determine whether it has jurisdiction over the defendant before entering judgment by default against a party who has not appeared in the case."[33] This "affirmative duty" requires the court "to look into its jurisdiction both over the subject matter and the parties."[34] The court has previously found that it has subject matter jurisdiction over the action.[35] Accordingly, the court turns to the personal jurisdiction analysis.

### I. Personal Jurisdiction

"In reviewing its personal jurisdiction, the court does not assert a personal defense of the parties; rather, the court exercises its responsibility to determine that it has the power to enter the default judgment."[36] Because this is a motion for default judgment, the "plaintiff need only make a prima facie showing" of personal jurisdiction.[37]

#### A. Service

First, the court addresses the adequacy of service in determining whether it has personal jurisdiction over Defendant. Plaintiff's complaint identified Defendant as a limited liability

---

[29] ECF No. 20.
[30] ECF No. 21, entered Jan. 23, 2023.
[31] Second Renewed Mot. Default J., ECF No. 22.
[32] ECF Nos. 22-4, 22-5, 22-6.
[33] *Dennis Garber & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997).
[34] *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986).
[35] ECF No. 21 at 4–5.
[36] *Williams*, 802 F.2d at 1203.
[37] *Dennis Garber & Assocs., Inc.*, 115 F.3d at 773.

company. Therefore, the court analyzes the adequacy of service in the context of Federal Rule of Civil Procedure 4(h). Rule 4(h) provides that service on a corporation, partnership, or association is adequate if effected "in the manner prescribed by 4(e)(1) . . . or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ."[38] Rule 4(e)(1) provides that service may be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."[39] North Carolina—the "location where service is made"—law provides for service by registered or certified mail, return receipt requested, or "[b]y delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to be served or to accept service of process or by serving process upon such agent or the party in a manner specified by any statute."[40] North Carolina's code further provides that "[w]hen an entity required to maintain a registered office and registered agent under G.S. 55D-30 fails to appoint or maintain a registered agent in this State, or when its registered agent cannot with due diligence be found at the registered office . . . , the Secretary of State becomes an agent of the entity upon whom any such process, notice or demand may be served."[41]

Plaintiff mailed the summons and amended complaint to the North Carolina Secretary of State.[42] On or around November 9, 2022, the North Carolina Department of the Secretary of State received the documents.[43] The department mailed the documents by certified mail with return receipt requests to "Bodyed By Bella LLC" at 4111 New Bern Ave., Suite 137, Raleigh,

---

[38] Fed. R. Civ. P. 4(h)(1)(a)–(b).
[39] Fed R. Civ. P. 4(e)(1).
[40] N. C. R. Civ. P. 4(j)(8).
[41] N.C.G.S. § 55D-33(b).
[42] Pehrson Decl. ¶ 8, ECF No. 22-1.
[43] ECF No. 20; see N.C.G.S. § 55D-33.

North Carolina, 27610.[44] The United States Postal Service returned the documents to the department on April 4, 2023.[45] The documents were marked "refused."[46]

Meanwhile, in March 2023, Plaintiff mailed the amended complaint via certified mail to the office of Defendant's registered agent, Toni Brown, at 4111 New Bern Ave., #137, Raleigh, North Carolina, 27610.[47] The package containing the amended complaint was marked "unclaimed" and returned to Plaintiff.[48]

The court finds that this is sufficient for a prima facie case. Plaintiff attempted to serve the amended complaint on Defendant's registered agent. The certified mail was returned to Plaintiff "unclaimed." At that point, Plaintiff had exercised due diligence in attempting to find Defendant's registered agent at the registered office. This meant that service of process on the Secretary of State was proper because the Secretary of State became the Defendant's agent once Plaintiff could not locate Defendant's registered agent at the registered office. Plaintiff has offered sufficient evidence that it served the amended complaint on Defendant.

### B. Minimum Contacts

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts."[49] "The law of the forum state and constitutional due process limitations govern personal jurisdiction in federal court."[50] Utah's long-arm statute extends personal jurisdiction to the full extent permitted by the Due Process

---

[44] ECF No. 22-5; ECF No. 22-6.
[45] ECF No. 22-5.
[46] *Id.*; ECF No. 22-6.
[47] Pehrson Decl. ¶ 5.
[48] Pehrson Decl. ¶ 7. The court presumes that the "returned to Defendant" rather than "returned to Plaintiff" was in error.
[49] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014)).
[50] *Id.* at 903 (citing *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000)).

Clause of the Fourteenth Amendment.[51] "The personal jurisdiction analysis here is thus a single due process inquiry."[52]

"Due process requires both that the defendant 'purposefully established minimum contacts within the forum State' and that the 'assertion of personal jurisdiction would comport with 'fair play and substantial justice.''"[53] "Specific jurisdiction means that a court may exercise jurisdiction over an out-of-state party only if the cause of action relates to the party's contacts with the forum state."[54] "[S]pecific personal jurisdiction requires (1) minimum contacts to show that (a) the defendant purposefully directed its activities at the forum state, and (b) the plaintiff's cause of action arose out of those activities; and (2) the exercise of jurisdiction would be reasonable and fair."[55]

The court starts its analysis with purposeful direction. "[W]here the defendant deliberately has engaged in significant activities within a State, . . . he manifestly has availed himself of the privilege of conducting business there."[56] For example, "[a]n out-of-state defendant's 'continuous[ ] and deliberate[ ] exploit[ation] [of] the [forum state] market' may [] satisfy the purposeful direction requirement."[57] "Factors suggesting purposeful direction based on forum state market exploitation include: (a) high sales volume and large customer base and revenues, and (b) extensive nationwide advertising or ads targeting the forum state."[58]

In the internet context specifically, a "State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) *directs electronic activity*

---

[51] Utah Code § 78B-3-201(3).
[52] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d at 903.
[53] *Id.* at 903 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).
[54] *Id.* at 904 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014)).
[55] *Id.* at 909.
[56] *Id.* at 905 (quoting *Burger King*, 471 U.S. at 475–76).
[57] *Id.* at 905–06 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 (1984)).
[58] *Id.* at 915.

*into the State*, (2) *with the manifested intent of engaging in business or other interactions within the State*, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts."[59] "[I]t is necessary to adapt the analysis of personal jurisdiction . . . by placing emphasis on the internet user or site *intentionally directing* his/her/its activity or operation at the forum state rather than just having the activity or operation accessible there."[60] The intentional direction element is required because it would be an "untenable result" if a person placing information on the internet were to become subject to personal jurisdiction in every state.[61] Subsequently, district courts in this circuit have found minimum contacts when a company operated a website that made 207 sales to forum state residents over two years representing .43% of its total sales,[62] 100 sales to forum state residents and earned .5% of its sales in the forum,[63] 37 sales to forum state residents over three and a half years,[64] four sales to forum state residents,[65] and three sales to forum state residents, including one ordered by plaintiff's counsel,[66] while a lack of evidence that a defendant made any sales in the forum prevented the court's exercise of personal jurisdiction.[67]

In *Old Republic Insurance Company v. Continental Motors, Inc.*, decided in 2017, the Tenth Circuit considered whether a Colorado district court could exercise personal jurisdiction over a defendant when the defendant operated a website that provided information to paid

---

[59] *Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011) (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002)) (emphasis in original).
[60] *Shrader*, 633 F.3d at 1240 (emphasis in original).
[61] *Id.* at 1240.
[62] *Alfwear, Inc. v. IBKUL UBHOT Ltd.*, No. 221CV00698DBBJCB, 2022 WL 3705483, at *5 (D. Utah Aug. 26, 2022).
[63] *Poulin Ventures, LLC v. MoneyBunny Co.*, No. 119CV01031JCHGBW, 2020 WL 6286440, at *6 (D.N.M. Oct. 27, 2020).
[64] *Edizone, LLC v. Asia Focus Int'l Grp., Inc.*, 196 F. Supp. 3d 1222, 1226 (D. Utah 2016).
[65] *DP Creations, LLC v. Adolly.com*, No. 2:22-CV-00230-DBB, 2022 WL 18087198, at *3 (D. Utah Nov. 2, 2022).
[66] *Parah, LLC v. G' Strat LLC*, No. 2:13CV756, 2014 WL 545871, at *1 (D. Utah Feb. 10, 2014).
[67] *DP Creations, LLC,* No. 2:22-CV-00230-DBB, 2022 WL 18087198, at *4.

8

members.[68] Specifically, the defendant's website allowed repair businesses to obtain unlimited access to its online service manuals in exchange for an annual fee.[69] One of its members accessed and consulted the manuals while servicing an airplane in Colorado, and the airplane later crashed in Idaho.[70] The plaintiff pointed to the company's 20 paid members in the forum state, Colorado, and argued that those memberships constituted "purposeful direction."[71] The 20 members had entered into agreements with the defendant, paying $1,000 annually to the defendant over the five years preceding the events giving rise to the litigation.[72] The circuit court found that this membership "pale[d] in comparison" to the sales, revenues, and customer bases found sufficient in other cases.[73] For example, the Supreme Court had found that sales of 10 to 15,000 copies of a magazine each month evinced purposeful direction, and the Seventh Circuit found that sales to "hundreds of thousands of customers" producing an annual revenue of "millions of dollars" showed the same.[74] The court also observed that while "advertising campaign[s] includ[ing] 'many television advertisements on national networks ... [and] extensive venue advertising and celebrity and sports sponsorships'" could constitute purposeful direction, a record without evidence that the defendant "launched national television commercials, placed physical advertisements in [forum state] venues, or obtained celebrity sponsorships" or "targeted [marketing] at [the forum state], such as geographically-restricted online ads" did not.[75]

---

[68] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d at 915.
[69] *Id.* at 900.
[70] *Id.*
[71] *Id.* at 915.
[72] *Id*.
[73] *Id.*
[74] *Id.* (citing *Keeton*, 465 U.S. at 774 (1984); *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 432 (7th Cir. 2010)).
[75] *Id.* (quoting *uBID, Inc.*, 623 F.3d at 427); *see id* at 918 ("Old Republic has failed to show that Continental Motors pursued continuing relationships with Colorado residents, deliberately exploited the Colorado market, or targeted defective content at Colorado. At most, the record supports the following contacts: (1) Continental Motors maintained a geographically-neutral website that advertised the FBO Program and allowed participants, including Colorado FBOs, to access online service manuals and bulletins; (2) it entered into repeated one-year agreements, which it did not specifically seek out or negotiate, with 20 Colorado FBOs in the five years preceding the Accident; (3) it contemplated some ongoing obligations—such as providing dedicated customer support—for the duration of

Here, accepting all the well-pleaded facts of Plaintiff's amended complaint as true, Defendant is a North Carolina limited liability company that "does business in Utah and throughout the United States."[76] "Specifically, Defendant offers to ship products to Utah through the infringing domain," and "Defendant has sold and shipped infringing product to individuals in Utah."[77] In addition to these assertions, Plaintiff has offered an affidavit attesting to the fact that "[o]n the Defendant's website, Utah consumers can purchase products containing the infringing Mark from Defendant, shop the online product offering, chat with customer service, sign up for promotional emails, and more."[78] Plaintiff's affiant explains that, "[u]pon placing an item in the shopping cart on the above listed website, a customer can ship purchases to Utah addresses. . . . Plaintiff has implemented a test purchase through this process, confirming the shipment to be sent to Utah."[79] Finally, "Plaintiff also ordered infringing product, . . . and the product was actually shipped to a Utah citizen at a Utah address."[80] Plaintiff attached an exhibit featuring a screenshot of a shipping page on "bodyedbybella.com," showing a shipping address located in Salt Lake City, Utah.[81] Another exhibit shows a screenshot, not displaying the website address, with a receipt and confirmation of delivery to Plaintiff's counsel at a Salt Lake City, Utah address.[82] The total is $34.50.[83]

---

these agreements; (4) it listed the FBOs on its website; (5) it sent one email to each FBO with account activation instructions; (6) it earned $5,200 a year from the FBO Program; (7) one of the FBOs, Arapahoe Aero, has participated in the FBO Program since 1996; and (8) Arapahoe Aero's reliance on Continental Motors' allegedly defective, geographically-neutral online content allegedly caused a financial loss to Old Republic's subrogor in Colorado.").
[76] Am. Compl. ¶ 4, 6.
[77] *Id.*
[78] Pehrson Decl. ¶ 4.
[79] *Id.* at ¶ 5.
[80] *Id.* at ¶ 6.
[81] ECF No. 15-1 at 8.
[82] ECF No. 15-1 at 10.
[83] *Id.*

10

All this is to say, Plaintiff has offered evidence that Defendant has a website on which it sells products direct to customers and it in fact sold one purportedly infringing product to Plaintiff's counsel in Utah after this action commenced. The court is aware of the difficult position Plaintiff is in due to the fact that Defendant has not participated in this action; Plaintiff did not have the benefit of Defendant's cooperation in conducting limited discovery for the purposes of personal jurisdiction. It is possible that Defendant makes many sales to Utah residents. However, the only evidence before the court is that one such sale has occurred, and it occurred after this litigation commenced for the sole purpose of establishing personal jurisdiction over Defendant. To find that Defendant has minimum contacts in Utah because of one sale manufactured for the purpose of litigation would mean that a plaintiff could establish minimum contacts in any state for any website through which an individual can purchase an item. Of course, the "arising out of" component will limit the causes of action for which this is sufficient for personal jurisdiction. In any event, the court need not decide whether Plaintiff has satisfied the minimum contacts because it finds that exercising personal jurisdiction would offend traditional notions of fair play and substantial justice.

### C. Fair Play and Substantial Justice

"Even if a plaintiff has met its burden of establishing minimum contacts, '[the court] must still inquire whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice.'"[84] "In determining whether a court's exercise of personal jurisdiction is ''reasonable' in light of the circumstances surrounding the case,' [courts] look to the following factors:"[85]

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving

---

[84] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d at 908 (quoting *Shrader*, 633 F.3d at 1240).
[85] *Trujillo v. Williams*, 465 F.3d 1210, 1221 (10th Cir. 2006)

>convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.[86]

"[T]he weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction."[87]

Starting with the burden on Defendant, "modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity."[88] Utah is over two thousand miles from North Carolina, the state in which Defendant is organized, meaning that there will be some burden due to the two-hour time difference and the multi-hour flight. There is no evidence that Defendant has any connection—such as a regional office—to Utah (or nearby), and only evidence of one sale to this state.

Next, while "States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors,"[89] Plaintiff is not a citizen of Utah.[90] "Although less compelling, a state may also have an interest in adjudicating a dispute between two non-residents where the defendant's conduct affects forum residents."[91] The only evidence that the dispute affects Utah's residents is that a Utah resident can purchase Defendant's purportedly infringing products, affecting the resident to the extent the resident thought they were purchasing Plaintiff's goods and Defendant's product differs in quality. "The state's interest is also implicated where resolution of the dispute requires a general application of the forum

---

[86] *Trujillo*, 465 F.3d at 1221 (quoting *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1279 (10th Cir. 2005)).
[87] *Id.* at 1221 (quoting *Pro Axess, Inc.*, 428 F.3d at 1280).
[88] *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005) (quoting *Burger King*, 471 U.S. at 474, 105 S.Ct. 2174).
[89] *Id.* at 1280 (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1096 (10th Cir. 1998)).
[90] Plaintiff is a limited liability company organized in Florida and has its principal place of business there. Am. Compl. ¶ 3.
[91] *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1096 (10th Cir. 1998) (citing *Carteret Savings Bank, FA v. Shushan*, 954 F.2d 141, 148 (3d Cir.1992)).

state's law."[92] The dispute does not require a general application of Utah's law; although Plaintiff alleges causes of action under Utah law, those are only before this court due to its exercise of supplemental jurisdiction permitted by Plaintiff's federal trademark, false designation of origin, and unfair competition claims.

The next factor "hinges on whether the Plaintiff may receive convenient and effective relief in another forum. This factor may weigh heavily in cases where a Plaintiff's chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit."[93] Plaintiff's chances of recovery under its three federal and two Utah causes of action will not be impacted, let alone greatly diminished, by its litigation of this matter in another forum within the United States.

The next "factor asks 'whether the forum state is the most efficient place to litigate the dispute.'"[94] "Key [sic] to this inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." It would appear that either North Carolina or Florida is the most efficient place to litigate this dispute—not Utah. The parties are located there, not here. And wherever the principal witnesses and other evidence is located, there is no allegation that any of it (other than the previously referenced single post-litigation purchase) is located in this district. Additionally, a year of litigation in this case—constituting the majority of its existence—has been devoted to addressing personal jurisdiction issues occasioned by this matter being filed here: an order to show cause in June 2022,[95] a brief concerning personal jurisdiction

---

[92] *OMI Holdings, Inc*, 149 F.3d at 1096 (citing *Asahi*, 480 U.S. at 115, 107 S.Ct. 1026).
[93] *Pro Axess, Inc.,* 428 F.3d at 1281 (quoting *OMI Holdings, Inc.*, 149 F.3d at 1097 (10th Cir. 1998)).
[94] *Id.* at 1281 (10th Cir. 2005) (quoting *OMI Holdings, Inc.*, 149 F.3d at 1097 (10th Cir. 1998)).
[95] ECF No. 12.

in July,[96] a denial of Plaintiff's first motion for default judgment for lack of personal jurisdiction,[97] limited discovery and a supplemental brief on personal jurisdiction in August,[98] a renewed motion for default judgment in October,[99] an order to show cause regarding service of the amended complaint in October,[100] a decision denying that renewed motion for lack of personal jurisdiction in January 2023,[101] and this second renewed motion for default judgment in May.[102] For these reasons, North Carolina or Florida is the most efficient place to litigate this dispute.

"The fifth factor of the reasonableness inquiry 'focuses on whether the exercise of personal jurisdiction by [the forum] affects the substantive social policy interests of other states or foreign nations.'"[103] Here, the court observes that, if Plaintiff is allowed to proceed in Utah, it would affect the substantive social policy interests of other states in allowing for forum shopping. The only known tie between either Plaintiff or Defendant and this forum is a single sale and delivery of a product from Defendant to Plaintiff's counsel. That same tie (the single sale) is the basis for allowing Plaintiff to assert Utah (as opposed to another state's) causes of action against Defendant, and to benefit from Tenth Circuit's precedent on its federal claims. This is not in the interests of the policies of the states.[104]

In conclusion, the court cannot exercise personal jurisdiction over Defendant because it would "offend traditional notions of fair play and substantial justice."[105]

---

[96] ECF No. 13.
[97] ECF No. 14.
[98] ECF No. 15.
[99] ECF No. 17.
[100] ECF No. 18.
[101] ECF No. 21.
[102] ECF No. 22.
[103] *Pro Axess, Inc.*, 428 F.3d at 1281 (quoting *OMI Holdings, Inc.,* 149 F.3d at 1097).
[104] *See Hanna v. Plumer*, 380 U.S. 460, 46 (1965) (noting federal policy to discourage forum-shopping).
[105] *Old Republic Ins. Co.*, 877 F.3d at 908 (quoting *Shrader*, 633 F.3d at 1240).

**ORDER**

THEREFORE, IT IS HEREBY ORDERED that Plaintiff's Second Renewed Motion for Default Judgment is DENIED for lack of personal jurisdiction. The court's determination that it lacks personal jurisdiction over this action also leads the court to dismiss this action in its entirety without prejudice. The clerk's office is directed to close the case.

Signed June 16, 2023.

BY THE COURT

David Barlow
United States District Judge